UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN H. WEST, JR.,                    Case No. 1:15-cv-267
    Petitioner,

                               Black, J.
    vs.                               Litkovitz, M.J.

WARDEN, ROSS                          **REPORT AND**
CORRECTIONAL INSTITUTION,              **RECOMMENDATION**
    Respondent.


Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

challenging his conviction and sentence for various drug-related offenses in Scioto County,

Ohio, Court of Common Pleas Case No. 11-CR-799. (Doc. 1).[1] This matter is before the Court

on the petition, respondent's return of writ and petitioner's brief in reply to the return of writ.

(Docs. 1, 9, 12).[2]

## I. PROCEDURAL BACKGROUND

### State Trial Proceeding

In September 2011, the Scioto County, Ohio, grand jury returned an indictment charging

petitioner with one first-degree felony count of trafficking in crack cocaine in violation of Ohio

---

[1] In the return of writ filed in response to the petition, respondent notes that petitioner has been convicted and sentenced in other criminal cases in Ohio. (*See* Doc. 9, p. 3 n.3, at PAGEID#: 618). In the fall of 2012, petitioner was convicted and sentenced to an aggregate three-year prison term upon entry of a guilty plea to two counts of trafficking in crack cocaine and one count of possession of criminal tools in Scioto County Court of Common Pleas Case No. 11-CR-273. (*Id.*; *see also* Doc. 8, Ex. 2). In addition, petitioner is "serving two sentences for other Franklin County convictions: 1) endangering children, 4 years, Case No. 10CR-3611 . . .; and 2) having a weapon while under disability, 3 years, concurrent with previous case, Case No. 11CR-2858." (Doc. 9, p. 3 n.3, at PAGEID#: 618; *see also* Doc. 8, Exs. 3-4). Petitioner is not challenging those other convictions and sentences in the instant action. (*See* Doc. 9, p. 3 n.3, at PAGEID#: 618).

[2] Respondent has also separately filed the trial transcript and 32 exhibits obtained from the underlying state-court record. (*See* Doc. 8).

Rev. Code § 2925.03(A)(1)/(C)(4)(f) (Count 1); one fourth-degree felony count of possession of

drugs in violation of Ohio Rev. Code § 2925.11(A)/(C)(4)(b) (Count 2); one fourth-degree

felony count of trafficking in drugs/crack cocaine in violation of Ohio Rev. Code §

2925.03(A)(2)/(C)(4)(c) (Count 3); one fifth-degree felony count of trafficking in drugs in

violation of Ohio Rev. Code § 2925.03(A)/(C)(4)(a) (Count 4); one fifth-degree felony count of

possession of drugs in violation of Ohio Rev. Code § 2925.11(A)/(C)(4)(a) (Count 5); and one

fifth-degree felony count of possession of criminal tools in violation of Ohio Rev. Code §

2923.24(A)/(C) (Count 6).  (Doc. 8, Ex. 1).[3]  The facts giving rise to the charges were

summarized as follows by the Ohio Court of Appeals, Fourth Appellate District, based on

evidence presented at petitioner's trial:[4]

> Scioto County authorities have actively investigated the delivery of drugs from
> Michigan to Portsmouth and during that investigation, became aware of the
> activities of appellant and his then girlfriend, Shelby Nelson.  For a number of
> months, both appellant and Nelson transported drugs from Franklin County to
> Scioto County.  Apparently, appellant and Nelson supplied drugs for local sale
> from Brandi Woods' Portsmouth apartment.
>
> Portsmouth Police involved with the Southern Ohio Drug Task Force eventually
> arranged for three controlled purchases from Brandi Woods.  Later, police
> obtained a search warrant for Woods' apartment and during the warrant's
> execution, encountered several individuals, including appellant.  Authorities also
> found drugs in the apartment, a jeep parked nearby that appellant and Nelson used
> to travel to Columbus, and over $2,000 cash in the pockets of a pair of appellant's
> shorts.
>
> . . . . At the jury trial, Shelby Nelson confirmed that, several times a week in 2011,
> she and appellant had been "running" cocaine (that they "cooked" into crack) and

---

[3] The indictment also contained a forfeiture specification and was later amended to change the date of the trafficking offense charged in Count 1.  (*See* Doc. 8, Exs. 1, 7).

[4] The Ohio appellate court summarized the facts in its direct appeal decision issued May 1, 2014.  (*See* Doc. 8, Ex. 19).  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence."  In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

other drugs from Columbus to Portsmouth. Usually, they would obtain one and
one half to two ounces of cocaine per unit.

Brandi Woods appears to have provided the most incriminating evidence against
appellant. Woods explained that appellant used her apartment as a base to traffic
drugs in Portsmouth. Woods further related that (1) the drugs that she sold in the
three controlled buys to a police informant all came from appellant, and (2) the
other person present at her apartment during the search warrant's execution,
Breon Kelly, is also a "runner" for appellant who sells drugs in Portsmouth.

(*Id.*, Ex. 19, pp. 2-4, at PAGEID#: 161-63).

The matter proceeded to trial before a jury, which found petitioner guilty as charged

except that Counts 2 and 3 were designated as fifth-degree rather than fourth-degree felonies.

(*See id.*, Ex. 12). The jury also found with respect to the first-degree felony trafficking offense

charged in Count 1 that the "weight of the drugs was . . . [e]qual to or exceeding 27 grams but

less than 100 grams." (*Id.*, at PAGEID#: 87; *see also id.*, Ex. 13).

On August 3, 2012, following a sentencing hearing, the trial court issued a Judgment

Entry sentencing petitioner to an aggregate prison term "of twelve (12) years with ten years

being mandatory." (*Id.*, Ex. 14, at PAGEID#: 99). Specifically, the court merged the possession

offense charged in Count 2 with the trafficking offense charged in Count 1, merged the

trafficking and possession offenses charged in Counts 4 and 5 with the trafficking offense

charged in Count 3, and sentenced petitioner to the following consecutive prison terms: a

mandatory ten-year prison term for the trafficking offense charged in Count 1; a twelve-month

prison term for the trafficking offense charged in Count 3; and a twelve-month prison term for

the possession-of-criminal-tools offense charged in Count 6. (*See id.*, at PAGEID#: 98-99).

**State Appeal Proceedings**

Assisted by new counsel, petitioner timely appealed to the Ohio Court of Appeals, Fourth

Appellate District. (*See* Doc. 8, Ex. 15). In the appellate brief filed by counsel on petitioner's

3

behalf, petitioner asserted the following assignments of error:

1. The trial court committed reversible plain error to the prejudice of Defendant by failing to instruct the jury pursuant to Ohio Revised Code 2923.03(D).

2. Appellant was deprived of his right to effective assistance of counsel as provided pursuant to the 14th and 6th Amendments to the U.S. Constitution [based on trial counsel's failure to request the jury instruction set forth in Ohio Revised Code 2923.03(D)].

3. The trial court erred to the prejudice of Appellant/Defendant by entering a guilty finding upon a verdict that was against the manifest weight of the evidence.

(*Id.*, Ex. 16).

On May 1, 2014, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling the assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 19).

Petitioner did not pursue a timely appeal to the Ohio Supreme Court. On July 2, 2014, over two weeks after the expiration of the 45-day appeal period, he filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Supreme Court. (*Id.*, Exs. 20-21). In the motion, petitioner generally claimed as "cause" for his delay in filing that his appellate counsel failed to inform him of the Ohio Court of Appeals' decision and never sent him a copy of the decision. (*See id.*, Ex. 21, at PAGEID#: 177-78). Petitioner stated that he ultimately obtained a copy of the decision by "print[ing it] off . . . from the Lexis program." (*Id.*). On September 3, 2014, the Ohio Supreme Court denied petitioner's motion for delayed appeal without opinion. (*Id.*, Ex. 22).

## Application To Reopen Appeal

On July 28, 2014, while his motion for delayed appeal was pending before the Ohio Supreme Court, petitioner filed a *pro se* application with the Ohio Court of Appeals, Fourth Appellate District, requesting that his appeal be reopened. (Doc. 8, Ex. 23). In the application

filed pursuant to Ohio R. App. P. 26(B), petitioner claimed that his counsel on direct appeal was

ineffective for failing to present a claim challenging the sufficiency of the evidence supporting

his conviction for the first-degree felony trafficking offense charged in Count 1. (*See id.*).

Petitioner contended that although the prosecutor "stated that 42 grams of Drugs were found in

order to [c]harge [petitioner] with a First Degree Felony, . . . in fact there was never 42 Grams of

any Drugs found in this case, and only 3.9 Grams were presented to the Grand Jury." (*Id.*, p. 2,

at PAGEID#: 190).

On October 9, 2014, the Ohio Court of Appeals denied petitioner's application to reopen

the appeal. (*Id.*, Ex. 25). The court reasoned:

> [E]ven assuming arguendo that appellant's counsel was constitutionally
> ineffective for failing to raise a sufficiency of the evidence argument, we
> nevertheless considered that issue [when addressing the assignment of error
> challenging the weight of the evidence that was asserted on direct appeal] and
> found that sufficient evidence was adduced at trial. Appellant can neither show
> prejudice nor show that the outcome of his appeal would have been otherwise if
> his proposed assignment of error had been raised.

(*Id.*, p. 5, at PAGEID#: 205).

It appears from the record that petitioner did not pursue an appeal to the Ohio Supreme

Court from the denial of his reopening application. (*See* Doc. 9, p. 6, at PAGEID#: 621).

### Federal Habeas Corpus Petition

In April 2015, petitioner commenced the instant federal habeas corpus action. (*See* Doc.

1). In his signed petition, petitioner presents the following grounds for relief:

> **Ground One:** The trial court committed reversible plain error to the prejudice of
> Defendant by failing to instruct the jury pursuant to Ohio Revised Code
> 2923.03(D).

> **Ground Two:** Appellant was deprived of his rights to effective assistance of
> counsel as provided pursuant to the 14th and 6th Amendments to the U.S.
> Constitution.

5

**Ground Three:** Manifest weight of evidence.

(Doc. 3, at PAGEID#: 17-19).

Respondent has filed a return of writ in response to the petition, and petitioner has filed a

brief in reply to the return of writ. (Docs. 9, 12).

## II.  OPINION

### A.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground One, Which Was Procedurally Defaulted In The State Courts And, In Any Event, Does Not Constitute A Cognizable Ground For Federal Habeas Relief

In Ground One of the petition, petitioner alleges that the trial court "committed reversible

plain error" when it failed to give a jury instruction on accomplice testimony in accordance with

the following provision set forth in Ohio Rev. Code § 2923.03(D):

> If an alleged accomplice of the defendant testifies against the defendant in a case
> in which the defendant is charged with complicity in the commission of or an
> attempt to commit an offense, an attempt to commit an offense, or an offense, the
> court when it charges the jury, shall state substantially the following:

> "The testimony of an accomplice does not become inadmissible because of his
> complicity, moral turpitude, or self-interest, but the admitted or claimed
> complicity may affect his credibility and make his testimony subject to grave
> suspicion, and require that it be weighed with great caution.

> It is for you, as jurors, in light of all the facts presented to you from the witness
> stand, to evaluate such testimony and to determine its quality and worth or its lack
> of quality and worth."

(*See* Doc. 3, at PAGEID#: 17).  Respondent contends that the claim is procedurally defaulted

and, in any event, does not constitute a cognizable ground for federal habeas relief.  (Doc. 9, pp.

11-16, at PAGEID#: 626-31).

As an initial matter, as respondent has argued, it appears that the claim alleged in Ground

One is barred from review due to procedural defaults that occurred in the underlying state court

proceedings.  In recognition of the equal obligation of the state courts to protect the

constitutional rights of criminal defendants, and in order to prevent needless friction between the

6

state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). It is also well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See, e.g., Harris v. Reed,* 489 U.S. 255, 260-62 (1989).

In this case, petitioner committed two procedural defaults. The first default occurred when petitioner's trial counsel failed to request any instruction pursuant to Ohio Rev. Code § 2923.03(D) and did not otherwise object to the omission of such an instruction at trial. Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005) (citing *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003)); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (pointing out that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the

adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See, e.g., Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin,* 632 F.3d at 315. In this case, the Ohio Court of Appeals clearly enforced the state procedural bar to review when it pointed out that petitioner had conceded his counsel did not request the particular jury instruction and went on to state that, therefore, its review of the assignment of error was for "plain error." (*See* Doc. 8, Ex. 19, p. 8, at PAGEID#: 167). Under well-settled Sixth Circuit precedents, the state appellate court's plain-error review did "not constitute a waiver of state procedural default rules." *See, e.g., Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir. 1989)); *see also Goodwin,* 632 F.3d at 315.

The second procedural default occurred when petitioner failed to pursue a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' May 1, 2014 decision overruling the assignment of error that was presented on direct appeal. The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for leave to file a delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . . the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"). Here, as in *Bonilla* and *Baker,* because petitioner failed to pursue a timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied petitioner leave to file a delayed appeal, the state's highest court was not provided

8

with an opportunity to consider the merits of petitioner's claim.

Because of the procedural defaults that occurred both at trial and on appeal, the claim alleged in Ground One of the petition is waived and barred from review by this Court unless petitioner "can demonstrate cause for the default[s] and actual prejudice . . . or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *See Hoffner v. Bradshaw*, 622 F.3d 487, 497 (6th Cir. 2010) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *see also Bonilla*, 370 F.3d at 497.

Petitioner has neither argued nor otherwise demonstrated that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). No such showing has been made to the extent that petitioner has challenged the weight and sufficiency of the evidence introduced at trial to establish his guilt, because actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell*, 547 U.S. 518, 538 (2006); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011).

Moreover, petitioner has not established cause for his procedural defaults in this case. Petitioner has contended as "cause" for his default in the trial proceedings that his trial counsel was ineffective for failing to request a jury instruction under Ohio Rev. Code § 2923.03(D). Petitioner has also argued as "cause" for his failure to file a timely appeal to the Ohio Supreme Court that his appellate counsel failed to inform him of the Ohio Court of Appeals' decision and

did not provide him with a copy of that decision. Cause for a procedural default may be established if it is the result of ineffective assistance of counsel in violation of the Sixth Amendment. *See Murray,* 477 U.S. at 488. Even assuming, without deciding, that petitioner is able to establish cause for his failure to file a timely appeal to the Ohio Supreme Court, as discussed *infra* in addressing the ineffective-assistance-of-counsel claim alleged in Ground Two of the petition, petitioner has not demonstrated that his trial counsel's failure to request the jury instruction amounted to ineffective assistance under the Sixth Amendment. Therefore, petitioner has not established cause sufficient to overcome the procedural bar to review.

In any event, as respondent has also argued, the claim alleged in Ground One is not cognizable in this federal habeas proceeding. In this federal habeas case, the Court has jurisdiction to review petitioner's claim only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider petitioner's claim to the extent petitioner contends that the trial court erred as a matter of state law by failing to give the accomplice-testimony instruction set forth in Ohio Rev. Code § 2923.03(D).

Furthermore, petitioner is unable to prevail on any claim that the trial court's failure to give the instruction amounted to error of federal constitutional dimension. As the Sixth Circuit explained in an analogous case, "'accomplice instructions as a general matter' are not required, and . . . a trial court does not violate a defendant's constitutional rights by failing to give a

10

specific accomplice instruction so long as the jury instructions 'adequately informed the jury

regarding the credibility of witness testimony' and 'alerted the jury to the various considerations

that it should take into account in weighing testimony.'" *Goff v. Bagley*, 601 F.3d 445, 469 (6th

Cir. 2010) (quoting *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000) (internal quotation marks

and citation omitted)); *see also Young v. Trombley*, 435 F. App'x 499, 503 (6th Cir. 2011). In

the instant case, the trial court gave the following instruction before the jury retired to deliberate:

> [Y]ou are the sole judges of the facts, the credibility of the witnesses and the
> weight of the evidence. . . .
>
> ****
>
> To determine the credibility of the witnesses you will apply the tests of
> truthfulness which you are accustomed to apply in your daily lives.
>
> You may consider the appearance of the witnesses upon the stand; the manner of
> testifying; the reasonableness of the testimony; the opportunity each witness had
> to see, hear and know the things concerning which he testified; accuracy of
> memory; frankness or lack of it; intelligence; interest and bias, if any; together
> with all the facts and circumstances surrounding the testimony.
>
> ****
>
> You are not required to believe the testimony of any witness simply because he or
> she was under oath. You may believe or disbelieve all or any part of the
> testimony of any witness. It is your province to determine what testimony is
> worthy of belief and what testimony is not worthy of belief.

(Doc. 8, Trial Tr. 297-99, at PAGEID#: 538-40). The court also gave a similar instruction at the

opening of petitioner's trial. (*See id.*, Trial Tr. 14-15, at PAGEID#: 251-52).

The jury instructions are virtually identical to the instructions on witness credibility that

were relayed to the jury in *Goff*. *See Goff*, 601 F.3d at 470. In *Goff*, the Sixth Circuit

determined that the failure to give a specific accomplice instruction does not amount to a

constitutional violation when such instructions are given because they satisfy the criteria

established in *Scott* by "both inform[ing] the jury regarding credibility and alert[ing] the jury to

what is properly considered when determining credibility." *See id.*  Similarly, here, because the

jury was adequately instructed regarding the credibility determination in weighing witness

testimony, the failure to give the specific accomplice instruction set forth in Ohio Rev. Code §

2923.03(D) does not trigger constitutional concerns.  *Cf. Young*, 435 F. App'x at 504 (holding

that because jury instructions were given that "contained the same directives as did the charge

approved in *Goff*," the failure to give a specific accomplice instruction did not violate the

petitioner's constitutional rights).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted

and has waived the claim alleged in Ground One of the petition in the absence of a showing of

cause for his procedural defaults or that a fundamental miscarriage of justice will occur if the

defaulted claim for relief is not considered by this Court.  In any event, the claim is not

cognizable in this federal habeas proceeding because the alleged error did not amount to a

violation of petitioner's federal constitutional rights.

**B. Petitioner Is Not Entitled To Relief Based On The Ineffective-Assistance-Of-Counsel Claims Alleged In Ground Two Of The Petition, As Specified By Petitioner In His Brief In Reply To The Return Of Writ**

In Ground Two of the petition, petitioner generally alleges that he was deprived of his

Sixth Amendment right to the effective assistance of counsel.   (Doc. 3, at PAGEID#: 18).

Respondent contends in the return of writ that the claim should be dismissed as "improperly

pled" because petitioner has not set forth the "specific factual basis" for the claim in the habeas

petition.  (Doc. 9, p. 16, at PAGEID#: 631).  In his brief filed in reply to the return of writ,

petitioner states as the factual basis for the ground for relief that his trial attorney was ineffective

for (1) failing to request the jury instruction on accomplice testimony that is set forth in Ohio

Rev. Code § 2923.03(D); (2) failing to challenge the first-degree felony offense charged in Count

1 of the indictment in the absence of any evidence showing that 42 grams of crack cocaine were involved in that offense other than an "amount of money that was found in a pair of short[]s that was never proven to belong to the Petitioner"; and (3) failing to request that "any type of test (DNA) [be] done on . . . shorts" that were linked to petitioner "to prove that they even belong to" him. (Doc. 12, pp. 4-5, at PAGEID#: 642-43).

As an initial matter, the specific claims that petitioner has asserted in his reply brief were procedurally defaulted in the state courts. Two of the claims were defaulted because petitioner never presented them to the state courts for consideration. Specifically, petitioner never asserted any claim challenging his trial counsel's failure to request testing of the shorts that were linked to him or to object to the first-degree felony charge contained in Count 1 of the indictment due to lack of evidence supporting that charge.[5] Petitioner did argue as an assignment of error on direct appeal to the Ohio Court of Appeals that his trial counsel was ineffective for failing to request the accomplice-testimony jury instruction set forth in Ohio Rev. Code § 2923.03(D). (*See* Doc. 8, Ex. 16, pp. 9-11, at PAGEID#: 118-20). However, as discussed above with respect to the procedurally-defaulted claim alleged in Ground One of the petition, the claim that was raised on direct appeal was defaulted when petitioner failed to pursue a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' May 1, 2014 decision overruling the assignment of error.

---

[5] Petitioner may argue that he raised the claim about the lack of evidence supporting the first-degree felony charge in Count 1 of the indictment in his application to reopen the appeal. In the reopening application, petitioner alleged that his appellate counsel was ineffective for failing to assert a claim on direct appeal challenging the sufficiency of the evidence supporting petitioner's conviction on Count 1. (*See* Doc. 8, Ex. 23). The claim in the reopening application, which pertains to appellate counsel's performance and the sufficiency of the evidence introduced at trial to establish petitioner's guilt on the charge contained in Count 1, is different from petitioner's claim alleged herein challenging trial counsel's failure to object to the indictment count. In any event, petitioner procedurally defaulted and has waived the claim presented in the reopening application because he did not pursue a further appeal to the Ohio Supreme Court in the reopening matter and has neither provided any justification for that default nor demonstrated that a "fundamental miscarriage of justice" will occur if the claim is not considered by this Court. Moreover, as the Ohio Court of Appeals found in denying the reopening application (*see id.*, Ex. 25), petitioner is unable to prevail on the claim asserted in the application because it appears from the record that the sufficiency-of-evidence issue was considered by the state appellate court when it overruled the assignment of error challenging the weight of the evidence that was presented by counsel on direct appeal. (*See id.*, Ex. 19, pp. 6-7, at PAGEID#: 165-66).

13

Although petitioner sought leave to file a delayed appeal with the Ohio Supreme Court, the state's highest court was not provided with an opportunity to consider the claim's merits because the court relied on an adequate and independent state ground when it denied petitioner's delayed appeal motion. *See, e.g., Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012).

Accordingly, as discussed above in addressing the defaulted claim alleged in Ground One of the petition, the ineffective-assistance-of-counsel claims that petitioner has asserted in his brief in reply to the return of writ are waived and barred from review by this Court unless petitioner can demonstrate cause for and prejudice from his defaults or that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Hoffner v. Bradshaw*, 622 F.3d 487, 497 (6th Cir. 2010); *Bonilla,* 370 F.3d at 497. Petitioner has neither argued nor otherwise demonstrated that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier,* 477 U.S. 478, 495-96 (1986); *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). In addition, petitioner has not provided any justification for his failure to present to the state courts the claims that are based on trial counsel's failure to request the testing of shorts that were linked to petitioner or to object to the first-degree felony charge contained in Count 1 of the indictment. Therefore, those two claims are waived and barred from review by this Court.

With respect to the remaining claim that was raised by petitioner on direct appeal, petitioner has contended as cause for his default that his appellate counsel failed to inform him of the Ohio Court of Appeals' direct appeal decision, which caused him to miss the filing deadline for pursuing a timely appeal to the Ohio Supreme Court. Without addressing the merits of

petitioner's argument, because the defaulted ineffective-assistance-of-trial-counsel claim was

also asserted as cause for petitioner's default of the claim alleged in Ground One of the petition,

the undersigned will assume in petitioner's favor that petitioner has demonstrated cause for his

default of the remaining claim challenging counsel's failure to request or object to the omission

of the accomplice-testimony jury instruction set forth in Ohio Rev. Code § 2923.03(D).

Therefore, the Court will consider the merits of that particular claim of ineffective assistance

despite petitioner's default in the state courts.

    As discussed above in addressing the claim alleged in Ground One, the omission of the

instruction did not rise to the level of a federal constitutional violation.  Therefore, the only way

petitioner can possibly prevail on his ineffective-assistance claim is by showing that his trial

counsel erred under Ohio law in failing to request or object to the omission of the instruction and

that such error amounted to a violation of petitioner's Sixth Amendment right to the effective

assistance of counsel.  This Court's review of such claim, which was adjudicated on the merits

by the Ohio Court of Appeals, is limited.  Under § 2254(d), a writ of habeas corpus may not

issue with respect to any claim adjudicated on the merits by the state courts unless the

adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the United States
> Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

    "A decision is 'contrary to' clearly established federal law when 'the state court arrives

at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially

15

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court has further held that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves

16

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412); *see also White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, __ U.S. __, 132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions."). Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

In this case, the Ohio Court of Appeals, which was the only state court to consider the remaining ineffective-assistance-of-trial-counsel claim, first found no merit to petitioner's underlying claim, asserted in a separate assignment of error, that the failure to give the accomplice-testimony instruction amounted to reversible plain error. (*See* Doc. 8, Ex. 19). In so ruling, the court arguably assumed that, as a matter of state law, error may have occurred by the omission of the jury instruction set forth in Ohio Rev. Code § 2923.03(D) because it accepted the premise that Shelby Nelson and Brandi Woods, who both testified at trial about their involvement as drug runners for petitioner, were petitioner's accomplices. (*See id.*, p. 8 n.1, at PAGEID#: 167). Nevertheless, the court rejected petitioner's claim of reversible state-law error, reasoning in pertinent part:

> Shelby Nelson testified that when she told appellant that she no longer wanted to be involved in drug activity, he, in order to keep her involved, perpetrated acts of domestic violence against her. The gist of Brandi Woods' testimony is that appellant took advantage of her drug addiction and supplied drugs in exchange for the use of her apartment to conduct his criminal enterprise. As the State correctly notes, we have held that . . . plain error will be recognized in cases when an accomplice instruction is not given if "the accomplice testimony is both uncorroborated and either incredible or unreliable."… Here, we believe that neither requirement has been satisfied. First, the drugs found in the apartment support the claim that appellant used Nelson, Woods and Breon Kelly as "runners" to sell drugs. Also, authorities located the jeep and large sum of cash in appellant's shorts. Additionally, the jury was made aware of the fact that Nelson and Woods had both been charged criminally as a result of these incidents. Apparently, the jury did not find their testimony incredible or unreliable, and our review of the transcript supports this view. While it may be possible that the jury could have chosen to discount the testimony of Woods and Nelson if they had been given the R.C. 2923.03(D) instruction, we cannot conclude, after our review of the evidence, that the trial's outcome would have been otherwise.

(*Id.*, pp. 9-10, at PAGEID#: 168-69) (Ohio case citations omitted). The court then went on to reject petitioner's related constitutional ineffective-assistance claim, reasoning as follows:

> Criminal defendants have a right to counsel that includes the right to effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). . . . To establish constitutionally ineffective

assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). . . . "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.". . .

In light of our review of the record and our resolution of appellant's first assignment of error, we cannot conclude that the trial's outcome would have been otherwise had trial counsel requested the R.C. 2923.03(D) instruction. Appellant's argument would require us to conclude that the jury would have rejected the testimony of both Nelson and Woods, and then found appellant's testimony credible despite all of the evidence elicited on cross-examination. We cannot reach that conclusion for the same reasons we could not do so when we analyzed his first assignment of error.

(*Id.*, pp. 10-11, at PAGEID#: 169-70) (Ohio case citations omitted).

As a threshold matter, the Ohio Court of Appeals correctly identified the standard of review enunciated by the Supreme Court in *Strickland* as the applicable standard to apply in addressing petitioner's ineffective-assistance-of-counsel claim. As the state appellate court recognized, to establish that his trial counsel was ineffective under *Strickland*, petitioner was required to demonstrate both (1) his trial attorney's conduct was constitutionally deficient; and (2) the attorney's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. Under the first prong of the *Strickland* test, petitioner had to show that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Id.* at 689. In determining whether or not counsel's performance was deficient, the court must indulge a strong presumption that the challenged conduct fell within the

wide range of reasonable professional assistance. *Id.*

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner had to demonstrate that a "reasonable probability" exists that, but for his counsel's alleged error, the result of his trial would have been different. *See Strickland,* 466 U.S. at 694. That burden is satisfied only by a showing that the result of the trial would "reasonably likely have been different absent the error[]." *Id.* at 695.

The court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner made an insufficient showing on either ground. *Id.* at 697.

In this federal habeas action, this Court must employ a "doubly deferential" standard of review in evaluating the reasonableness of the Ohio Court of Appeals' adjudication of petitioner's claim under *Strickland. See Woods v. Daniel,* __ U.S. __, 135 S.Ct. 1372, 1376 (2015); *Burt v. Titlow,* __ U.S. __, 134 S.Ct. 10, 13 (2013); *Premo v. Moore,* 562 U.S. 115, 122-23 (2011) (quoting *Harrington,* 562 U.S. at 104-05); *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009). Although "[s]urmounting *Strickland*'s high bar is never an easy task," *Harrington,* 562 U.S. at 105 (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)), the AEDPA requires that a second layer of deference be accorded the state courts' adjudication of ineffective assistance of counsel claims. The Supreme Court has explained:

> Even under *de novo* review, the [*Strickland*] standard for judging counsel's representation is a most deferential one. . . .
>
> ****
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem,

20

> review is "doubly" so. . . . The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial. . . . Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at

123); *see also Premo*, 562 U.S. at 122-23. Therefore, on federal habeas review, "[t]he pivotal

question is whether the state court's application of the *Strickland* standard was unreasonable,"

which "is different from asking whether defense counsel's performance fell below *Strickland*'s

standard." *Harrington*, 562 U.S. at 101.

Upon review of the trial transcript, the undersigned concludes that it was not

unreasonable for the Ohio Court of Appeals to hold that petitioner had not demonstrated his trial

counsel's alleged state-law error in failing to request or object to the omission of the accomplice-

testimony jury instruction amounted to constitutionally ineffective assistance within the meaning

of the Sixth Amendment.

As the Ohio Court of Appeals apparently recognized in this case, under Ohio law, the

omission of the jury instruction when an accomplice testifies against the defendant in a jury trial

does not amount to reversible error unless the defendant "would have obtained a different result

at trial" if the instruction had been given. *See State v. Mack*, No. 26859, 2014 WL 1345308, at

*2 (Ohio Ct. App. Mar. 31, 2014); *see also State v. Harrison*, 31 N.E.3d 220, 251 (Ohio Ct. App.

2015); *State v. Lewis,* No. 14CA3467, 2015 WL 6111474, at *2 (Ohio Ct. App. Oct. 14, 2015).

Ohio courts "generally look to three factors" in determining whether the omission would affect

the trial's outcome: "(1) whether the accomplice's testimony was corroborated by other

evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that

[he/she] benefitted from agreeing to testify against the defendant; and/or (3) whether the jury was

instructed generally regarding its duty to evaluate the credibility of the witnesses and its province

to determine what testimony is worthy of belief." *Lewis, supra*, 2015 WL 6111474, at *3

(quoting *State v. Bentley*, No. 2004-P-0053, 2005 WL 2135141, at *8 (Ohio Ct. App. Sept. 2,

2005), in turn quoting *State v. Woodson*, No. 03AP-736, 2004 WL 2406564, at *4 (Ohio Ct.

App. Oct. 28, 2004)); *see also State v. Jackson*, No. 2012-L-061, 2013 WL 5936337, at *4 (Ohio

Ct. App. Nov. 4, 2013). Numerous Ohio appellate courts "have concluded that if the first factor

and one other factor are present, the absence of the accomplice instruction will not affect the

outcome of the case." *See Woodson, supra,* 2004 WL 2406564, at *4 (and numerous cases cited

therein); *see also Jackson, supra*, 2013 WL 5936337, at *4.

   Here, the record supports the Ohio Court of Appeals' finding that the accomplice

testimony at issue in this case was corroborated. Not only did Nelson and Woods corroborate

each other's testimony about the events that led to petitioner's indictment and their participation

in the charged drug offenses as "runners" for petitioner as the principal offender (*see* Doc. 8,

Trial Tr. 119-32, 140-49, 154-55, 163-79, 188-89, at PAGEID#: 355-68, 376-80, 383-85, 390-

91, 399-415, 424-25), but other corroborating evidence was introduced at trial to support their

testimony and to establish petitioner's guilt on the charges. Specifically, evidence was presented

that Breon Kelly, another individual who was present in Woods' apartment when the search

warrant was executed, had provided information to the police, which corroborated Nelson's and

Woods' testimony about the events giving rise to the indictment and their status as "runners" for

petitioner, who was the principal offender in the enterprise involving the transport and trafficking

of drugs brought from Columbus to sell in Portsmouth. (*See id.*, Trial Tr. 82-83, 85, at

PAGEID#: 318-19, 321). Furthermore, evidence obtained during the execution of the search

warrant, including the large amount of money found in a pair of shorts discovered "right next" to

petitioner and identified by Woods as belonging to petitioner, corroborates not only Nelson's, Woods' and Kelly's consistent version of events, but also Nelson's and Kelly's statements about the amount of crack cocaine (an ounce and a half) claimed to have been brought by petitioner from Columbus for sale in Portsmouth the day before the search was conducted.  (*See id.*, Trial Tr. 35, 45-46, 51, 82-83, 85, 87-88, 93, 95-97, 103, 107-08, 175, at PAGEID#: 272, 282-83, 288, 318-19, 321, 323-24, 329, 331-33, 339, 343-44, 411).

In addition, as the Ohio Court of Appeals pointed out, the jury was made aware of the criminal charges lodged against Nelson and Woods for their participation in the criminal enterprise and the benefit they would receive in those cases by testifying for the State at petitioner's trial.  Nelson affirmed on direct examination that she was "indicted arising out of this case," had entered a guilty plea to trafficking in crack cocaine and possession of criminal tools, and was "to receive a sentence of four years" with "eligibility for judicial release to a six month in-house drug rehab program at one year."  (*Id.*, Trial Tr. 118, at PAGEID#: 354).  Woods testified that she too faced "charges resulting out of the incident involving [petitioner]" and had entered a plea agreement with the State to plead guilty to three counts of trafficking and one count of conspiracy for a prison sentence to be imposed of "four years and eleven months" with "possible early release in a year or two."  (*Id.*, Trial Tr. 153, at PAGEID#: 389).  Defense counsel emphasized in closing arguments to the jury that neither Nelson nor Woods had been sentenced yet and, therefore, had "something to gain" by testifying against petitioner.  (*Id.*, Trial Tr. 283, at PAGEID#: 524).

Finally, as discussed above in addressing the merits of the claim alleged in Ground One, the jury was expressly instructed both at the opening and closing of trial that it was the sole and exclusive judge of the credibility of witnesses with the authority to "believe or disbelieve a

particular witness and how much weight, if any, to give to the testimony of each witness" after

taking into consideration various factors, including each witness's "interest and bias." (*See id.*,

Trial Tr. 14, 297-99, at PAGEID#: 251, 538-40). Ohio courts have found that, as a matter of

state law, such instructions are "sufficient" despite the failure of the trial court to provide an

accomplice testimony. *See Bentley*, *supra*, 2005 WL 2135141, at *8-9; *see also Jackson*, *supra*,

2013 WL 5936337, at *5; *Woodson*, *supra*, 2004 WL 2406564, at *4.

This Court is bound by the Ohio Court of Appeals' determination that the failure to give

the specific accomplice-testimony instruction set forth in Ohio Rev. Code § 2923.03(D) did not

rise to the level of reversible error under Ohio law. *Cf. Jones v. Woods*, __ F. App'x __, No. 15-

1031, 2015 WL 9309374, at *4 (6th Cir. Dec. 22, 2015) (citing *Davis v. Straub*, 430 F.3d 281,

291 (6th Cir. 2005)) (in affirming the district court's denial of a habeas petition based on a claim

that the petitioner's trial counsel was ineffective for failing to request a self-defense jury

instruction, the Sixth Circuit emphasized that "[w]e are bound by the [state] Court of Appeals'

determination that [the petitioner] was not entitled to the instruction under state law"); *Warner v.

Zent*, 997 F.2d 116, 133 (6th Cir. 1993) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 690-91

(1975)) (absent a showing of "extreme circumstances where it appears that the [state court's]

interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue,"

the federal habeas court is bound by the state court's determination of state law").[6]  In any event,

given the factors present in this case—*i.e.*, the existence of corroborating evidence; the jury's

knowledge of the State's plea agreements with Nelson and Woods; and the general instructions

---

[6] *See also Bennett v. Warden, Lebanon Corr. Inst.,* 782 F. Supp.2d 466, 478 (S.D. Ohio 2011) (and cases cited therein) ("because the state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters"); *Meyers v. Ohio*, No. 1:14cv1505, 2016 WL 922633, at *7 (N.D. Ohio Jan. 21, 2016) (Report & Recommendation) (quoting *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); citing *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988)) ("'it is not the province of the federal habeas court to reexamine state-court determinations of state-law questions'"; "[m]oreover, federal habeas courts are bound by decisions of intermediate state courts on questions of state law unless convinced that the state's highest court would decide the issue differently"), *adopted*, 2016 WL 916602 (N.D. Ohio Mar. 9, 2016).

that were given on witness credibility, the Ohio Court of Appeals did not unreasonably conclude that, as a matter of state law, the alleged error was harmless because it had no material impact on the jury's verdict or, in other words, did not affect the trial's outcome.

In light of the Ohio Court of Appeals' reasonable resolution of the underlying claim of state-law error, the undersigned concludes that the state court's adjudication of petitioner's related ineffective-assistance-of-counsel claim is neither contrary to nor involved an unreasonable application of *Strickland*. It was reasonable for the state court to find that counsel's alleged error did not constitute ineffective assistance because, under the second prong of the *Strickland* test, it was not reasonably likely that the result of the trial would have been different if the accomplice-testimony instruction had been given. *Cf. Arthurs v. Warden, Warren Corr. Inst.*, No. 2:11cv541, 2012 WL 995395, at *17 (S.D. Ohio Mar. 23, 2012) (Report & Recommendation) (holding in an analogous federal habeas case that the Ohio Court of Appeals did not unreasonably apply the *Strickland* test in rejecting the petitioner's ineffective-assistance-of-counsel claim based on its reasonable determination "that the failure to give an accomplice instruction had no material impact on the jury's decision" in light of "the existence of substantial corroborating evidence, the jury's knowledge of the plea agreement given to [the alleged accomplice witness], the general instruction on credibility, and counsel's ability to argue this point to the jury"), *adopted*, 2012 WL 3728013 (S.D. Ohio Aug. 28, 2012). Therefore, this Court "may not disturb [the Ohio Court of Appeals'] ruling," which "is also dispositive of petitioner's contention that [the] ineffective assistance of [his trial] counsel can serve as a basis for excusing the procedural default of" the claim alleged in Ground One of the petition. *Cf. id.*

Accordingly, in sum, petitioner has not demonstrated that he is entitled to habeas corpus relief based on the ineffective-assistance-of-counsel claim alleged in Ground Two of the petition,

which involves allegations of errors by petitioner's trial counsel as specified in petitioner's brief

in reply to respondent's return of writ. Petitioner procedurally defaulted and has waived his

claim of ineffectiveness based on allegations never presented to the state courts that petitioner's

trial counsel should have requested the testing of shorts that were linked to petitioner and should

have objected to the first-degree felony charge set forth in Count 1 of the indictment. Moreover,

the Ohio Court of Appeals' adjudication of the remaining claim of ineffectiveness, based on trial

counsel's failure to request or object to the omission of the accomplice-testimony instruction set

forth in Ohio Rev. Code § 2923.03(D), is neither contrary to nor involved an unreasonable

application of *Strickland*. Because petitioner has not shown that the state appellate court's

determination "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement," *see*

*Harrington*, 562 U.S. at 103, petitioner is not entitled to habeas relief based on such claim and is

unable to rely on trial counsel's alleged error as "cause" for excusing his procedural default of

the claim alleged in Ground One of the petition.

**C. Petitioner Is Not Entitled To Relief Based On His Claim In Ground Three Challenging The Weight/Sufficiency Of The Evidence Supporting His Convictions**

In Ground Three of the petition, petitioner contends that he is entitled to habeas relief

because the jury's verdicts of guilt on the criminal charges are against the manifest weight of the

evidence. (Doc. 3, at PAGEID#: 19).

As respondent has argued in the return of writ (*see* Doc. 9, p. 17, at PAGEID#: 632), this

Court lacks jurisdiction to consider petitioner's claim to the extent that he challenges the weight

of the evidence supporting his convictions. That claim raises an issue of state-law only, which is

not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S.

1, 5-6 (2010); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Pulley v. Harris,* 465 U.S. 37, 41

(1984); *Jackson v. Warden, Chillicothe Corr. Inst.,* No. 1:14cv128, 2015 WL 4481517, at *1,

*16 (S.D. Ohio July 22, 2015) (Dlott, J.; Wehrman, M.J.) (and cases cited therein); *see also*

*Richardson v. Smith,* No. 3:11cv1217, 2012 WL 5903986, at *17 (N.D. Ohio Oct. 30, 2012)

(Report & Recommendation)  (quoting *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982)) ("claim that

a conviction is against the manifest weight of the evidence is not cognizable in federal habeas

corpus review" because it is "derived from purely state law whereby the state appellate court sits

as a 'thirteenth juror and disagrees with fact finder's resolution of conflicting testimony' and

finds that the fact finder 'clearly lost its way and created such a miscarriage of justice that the

conviction must be reversed and a new trial ordered'"), *adopted*, 2012 WL 5903896 (N.D. Ohio

Nov. 26, 2012).  *Cf. Nash v. Eberlin*, 258 F. App'x 761, 765 & n.4 (6th Cir. 2007) (recognizing

that "a manifest-weight-of-the-evidence argument is a state-law argument").  Instead, the Court

only has jurisdiction to consider a claim challenging the sufficiency of the evidence, which

presents a due process issue.

Petitioner has suggested in his brief in reply to the return of writ that he is also contesting

the sufficiency of the evidence supporting his convictions.  (*See* Doc. 12, pp. 5-7, at PAGEID#:

643-45).  As discussed above at length with respect to the procedurally-defaulted claims alleged

in Grounds One and Two of the petition, to the extent that the Ohio Court of Appeals considered

the constitutional issue on direct appeal when it overruled petitioner's assignment of error

challenging the weight of the evidence, petitioner committed a procedural default by failing to

pursue a timely appeal to the Ohio Supreme Court from the state appellate court's direct appeal

decision.  In any event, even assuming, without deciding, that the argument petitioner has

asserted as "cause" for his failure to file a timely appeal has merit, petitioner has not

demonstrated that he is entitled to habeas relief based on the merits of any claim of insufficient

evidence.

The well-settled standard of review for evaluating the merits of constitutional claims

challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v.*

*Virginia*, (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause

requires the State to prove beyond a reasonable doubt every fact necessary to constitute the

charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in

assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except

that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced

with a record of historical facts that supports conflicting inferences must presume–even if it does

not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of

the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959,

969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in

testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,*

443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence,

reevaluate the credibility of witnesses, make its own subjective determination of guilt or

innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see*

*also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567

F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v.*

*Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th

28

Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

In this case, the Ohio Court of Appeals was the only state court to address petitioner's claim on the merits. Utilizing the more stringent state-law standard applicable to manifest-weight-of-the-evidence claims,[7] the court overruled petitioner's assignment of error, reasoning in pertinent part as follows:

---

[7] In *Jackson, supra,* 2015 WL 4481517, at *16, the Court recognized that the state-law standard of review is "more stringent" given that a "finding that a conviction is supported by the weight of the evidence [under Ohio law] must necessarily include a finding of sufficiency."

In the case sub judice, after our review of the record we are not persuaded that appellant's convictions are against the manifest weight of the evidence. The evidence seized during the search warrant's execution, as well as the testimony of Nelson and Woods, persuade us that the jury did not lose its way and create a manifest miscarriage of justice. Rather, we believe that ample competent, credible evidence supports the jury's conclusion.

. . . .[Appellant's] "Notice of Supplemental Authority" argues that his conviction under "R.C. 2925.03(A)(1)/(C)(4)(F) (presumably referring to the count one trafficking charge) is against the manifest weight of the evidence because the only evidence of the weight of the drug is "1.4 grams," which is less than the twenty-seven gram minimum needed for a conviction under the statute. We believe, however, that two problems exist with this argument. First, rather than challenge the manifest weight of the evidence, appellant appears to challenge the sufficiency of the evidence. Manifest weight and sufficiency of evidence arguments are quantitatively and qualitatively different from one another. . . .

The second problem is appellant's selective recall of the evidence adduced at trial. Our review of the evidence reveals that authorities recovered $2,142 from what Brandi Woods identified as appellant's shorts. Portsmouth Police Officer Joshua Justice testified that [a] one-half (1/2) gram of crack cocaine could be purchased for $50. At $50 per half gram, the $2,142 found in appellant's shorts indicates that appellant, or his "runners," sold approximately 42.84 grams of crack. Moreover, the witnesses provided testimony at trial concerning the actual volume of drugs transported from Columbus to Portsmouth on the dates in question, including the methods and process that appellant used to transport the drugs and the sales that resulted from their efforts. Also noteworthy is the evidence found in the apartment, including numerous torn, empty plastic baggies that were used to transport cocaine. . . . This evidence is sufficient to satisfy statutory requirements of count one of the indictment.

(Doc. 8, Ex. 19, pp. 5-7, at PAGEID#: 164-66) (footnotes omitted).

Applying the double-layer deferential standard to the case-at-hand, and upon review of the trial record, the undersigned is convinced that the Ohio Court of Appeals' rejection of petitioner's assignment of error is neither contrary to nor unreasonable under the clearly-established standard of review enunciated by the Supreme Court in *Jackson*.

First, it was not unreasonable for the Ohio Court of Appeals to find that the evidence adduced at trial was sufficient to establish petitioner's guilt. As discussed earlier, both Shelby Nelson and Brandi Woods implicated petitioner as the principal offender in the criminal

enterprise involving the transport and trafficking of drugs brought from Columbus to sell in

Portsmouth. (*See* Doc. 8, Trial Tr. 119-32, 140-49, 154-55, 163-79, 188-89, at PAGEID#: 355-

68, 376-80, 383-85, 390-91, 399-415, 424-25). Moreover, evidence was introduced that Breon

Kelly, another participant in the enterprise, had provided information to the police, which

corroborated Nelson's and Woods' version of events. (*See id.*, Trial Tr. 82-83, 85, at PAGEID#:

318-19, 321). As the Ohio Court of Appeals reasonably found, the evidence of illegal activity

obtained during the execution of the search warrant also implicated petitioner, who was present

in the apartment when the search was conducted. As the state appellate court specifically

pointed out, evidence was discovered indicating that the individuals in the apartment were

involved in the trafficking of drugs. (*See id.*, Trial Tr. 96-97, at PAGEID#: 332-33). The police

also discovered $2,142 in a pair of shorts, which a rational juror could infer belonged to

petitioner because the article of clothing was found "right next" to petitioner, who was lying in

bed when the search warrant was executed, and was also later identified by Brandi Woods as

belonging to petitioner. (*See id.*, Trial Tr. 51, 93, 175, at PAGEID: 288, 329, 411). An

investigating police officer, Joshua Justice, testified that the "[g]oing rate [for] crack cocaine is

... $50.00 for a half gram" or "$100 for a gram." (*See* Doc. 8, Trial Tr. 35, at PAGEID#: 272).

As the Ohio Court of Appeals pointed out, given Justice's testimony, the amount of money found

in the shorts linked to petitioner correlates with a finding that he was involved in the trafficking

of approximately 42 grams of crack cocaine. Such a finding supports petitioner's conviction for

the first-degree felony charged in Count 1, which required the jury to find beyond a reasonable

doubt that the amount of cocaine involved in the trafficking offense equaled or exceeded 27

grams and was less than 100 grams. *See* Ohio Rev. Code § 2925.03(C)(4)(f).

Petitioner has argued that the money found in the shorts was insufficient to establish

beyond a reasonable doubt the first-degree felony charged in Count 1 of the indictment.  Even

assuming, solely for the sake of argument, that more evidence was needed to establish

petitioner's guilt on that count, evidence was introduced that both Nelson and Kelly had stated to

police that petitioner brought an ounce and a half of crack cocaine from Columbus for sale in

Portsmouth the day before the search was conducted.  Officer Justice testified at trial that an

ounce of crack cocaine equals 28 grams.  (*Id.*, Trial Tr. 35, at PAGEID#: 272).  Therefore,

standing alone, Kelly's and Nelson's consistent statements that petitioner brought an ounce and a

half, or approximately 42 grams, of crack cocaine to Portsmouth in one of the many trips he

made there from Columbus are sufficient to establish petitioner's guilt for the first-degree felony

offense charged in Count 1.  Indeed, Kelly's and Nelson's statements support the reasonable

inference that the amount of money found in the shorts linked to petitioner was obtained from the

sale of the drugs he had brought to Portsmouth the previous day.

Finally, petitioner contends that the evidence was insufficient because the main evidence

of his culpability in the charged offenses came from the two "accomplice" witnesses, Nelson and

Woods, whose trial testimony should have been viewed as suspect and lacking in credibility.

(*See* Doc. 12, pp. 5-6, at PAGEID#: 643-44).  However, in assessing the sufficiency of the

evidence under the *Jackson* standard of review, the reviewing court is precluded from

reweighing the evidence, reevaluating the credibility of witnesses or resolving conflicts in

testimony, because those are issues for the fact-finder to decide.  *See Jackson,* 443 U.S. at 318-

19 & n.13; *see also Fisher,* 648 F.3d at 450 (citing *Brown,* 567 F.3d at 205).  In any event,

although accomplice testimony has been recognized as triggering credibility concerns, a rational

juror could have chosen to believe Nelson's and Woods' consistent testimony implicating

petitioner in the offenses, particularly given that the only evidence refuting their version of

events was by petitioner, whose own self-serving testimony reasonably could have been found to be even more suspect and lacking in credibility.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to relief based on his claim in Ground Three of the petition challenging the weight and sufficiency of the evidence against him.  Petitioner's claim challenging the weight of the evidence is not cognizable in this federal habeas proceeding because it raises only an issue of state law, which this Court lacks jurisdiction to review.  To the extent that petitioner has asserted a sufficiency-of-evidence claim that is subject to review by this Court, the claim was procedurally defaulted by petitioner in the state courts.  In any event, petitioner is not entitled to habeas relief based on such claim because the Ohio Court of Appeals' determination that sufficient evidence was presented to support petitioner's convictions is neither contrary to nor involves an unreasonable application of the clearly-established applicable standard of review enunciated by the Supreme Court in *Jackson*.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to claims alleged in the petition.  To the extent that petitioner has raised claims which this Court has concluded are waived and thus procedurally barred from review, a certificate of appealability should not issue because, under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" either would not find it debatable whether this Court is correct in its procedural rulings or would not find it debatable whether petitioner has stated a viable constitutional claim.  In addition, to the extent that petitioner has raised claims that have been

33

considered on the merits herein, a certificate of appealability should not issue because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/22/16

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOHN H. WEST, JR.,
    Petitioner,

vs.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:15-cv-267

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc